IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| IN RE:  AME CHURCH EMPLOYEE RETIREMENT FUND LITIGATION | MDL Docket No. 1:22-md-03035-STA-jay<br><br>ALL CASES |

**DEFENDANT SYMETRA LIFE INSURANCE COMPANY'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

Markham R. Leventhal
Benjamin M. Stoll
CARLTON FIELDS, P.A.
Suite 400 West
1025 Thomas Jefferson Street, NW
Washington, DC 20007
Telephone:  (202) 965-8189
Facsimile:  (202) 965-8104

Todd M. Fuller
CARLTON FIELDS, P.A.
2 MiamiCentral, Suite 1200
700 NW 1st Avenue
Miami, Florida 33136
Telephone:  (305) 530-0050
Facsimile:  (305) 530-0055

*Attorneys for Defendant
Symetra Financial Corporation*

## **TABLE OF CONTENTS**

*Page*

INTRODUCTION TO REPLY ............................................................................................... 1

I.   PLAINTIFFS LACK CONSTITUTIONAL STANDING ................................................. 2

II.  SYMETRA BREACHED NO DUTY—FIDUCIARY OR OTHERWISE........................ 5

III. SYMETRA'S DISBURSEMENTS DID NOT PROXIMATELY CAUSE ANY HARM............................................................................................................................ 7

IV.  PLAINTIFFS' TENNESSEE UNIFORM TRUST CODE CLAIM IS DERIVATIVE OF THEIR FIDUCIARY DUTY CLAIM AND FAILS FOR THE SAME REASONS ........................................................................................................... 9

V.   PLAINTIFFS CANNOT MAINTAIN ERISA CLAIMS AGAINST SYMETRA WHILE AFFIRMATIVELY PLEADING THAT ERISA DOES NOT APPLY ............... 9

CERTIFICATE OF SERVICE ............................................................................................... 12

# INTRODUCTION TO REPLY

Plaintiffs' response does not—and cannot—dispute two critical deficiencies in the Complaint (ECF No. 74), each independently requiring dismissal of all claims against Symetra:

1. None of Symetra's alleged conduct involved any discretion or control or otherwise gave rise to any fiduciary duty to Plaintiffs (or the Plan); and

2. All alleged losses came from investments Harris made *outside* of Symetra, so none of Symetra's alleged conduct proximately caused any losses to Plaintiffs or the Plan.

Plaintiffs argue that Symetra's "claimed indifference" to Harris's outside investments made the Plan an "easy target" for his fraud, Opp. at 1, but Symetra wasn't indifferent—it just had no knowledge of what those investments were or authority to supervise them. Plaintiffs likewise accuse Symetra of having "fueled" an "egregious conspiracy," *id.*, but they make no *factual* allegations that suggest Symetra participated in or even knew about the alleged conspiracy.

Plaintiffs' claims against Symetra all hinge on their insinuation that Symetra somehow acted improperly by following Harris's instructions to disburse funds to Eaton and the Motorskills Entities ("Motorskills"). But Plaintiffs allege no factual basis for that insinuation. To the contrary, Plaintiffs concede that as the Plan's Trustee Harris had authority to order these disbursements. Compl. ¶¶ 140, 248; Plan §§ 7.1–7.3, 9.11. Plaintiffs allege only that Symetra failed to confirm that authority before making the disbursements. Even if this were true (which it is not), it is irrelevant because Harris *had* the requisite authority to order the disbursements: if Symetra had confirmed Harris's authority, Symetra still would have executed the disbursements. It would have been *unlawful* (a breach of contract) for Symetra to refuse Harris's disbursement orders. And all of the Plan's losses stem not from these disbursements, but from alleged conduct by Harris and others after those disbursements were made, for which Symetra was plainly not responsible.

Fundamentally, Plaintiffs' position is that Symetra was required to perform due diligence on Harris's outside investment choices before following his disbursement orders. There is no factual or legal basis to support such an implausible duty. As a contractual matter, Harris originated the Symetra annuity, as he was expressly authorized to do as Plan Trustee. Symetra had no more right to refuse his disbursement requests than Vanguard could refuse its customer's request to remove money from his or her brokerage account. Plaintiffs' theory would create a new duty on the part of banks and other investment providers to pre-investigate and assess the propriety of outside investments before complying with an account owner's withdrawal requests. There is no basis for creating such an expensive, burdensome, and unworkable regime, which would significantly delay disbursements and dramatically increase the costs (and lower the returns) of annuities (and other investments). The burden of supervising retirement plan trustees rightly lies with the plan's sponsor and fiduciaries like AMEC, not investment providers like Symetra.

## I.     PLAINTIFFS LACK CONSTITUTIONAL STANDING

Plaintiffs treat the rule against beneficiary standing as completely distinct from the requirements of Article III standing, when the rule is actually just a straightforward application of the traditional injury-in-fact requirement. A plaintiff must allege a "concrete and particularized" injury that affects him "in a personal and individual way." *Spokeo v. Robins*, 578 U.S. 330, 339 (2016). Plaintiffs cannot allege a personal individualized injury here because the lost Plan assets do not legally belong to Plaintiffs; they belong to the Trust, which is legally distinct from its beneficiaries. By characterizing the losses as "the drastically reduced valuation of Plaintiffs' individual retirement accounts," Opp. at 5, Plaintiffs ignore the law of trusts, which does not allow beneficiaries to treat trust funds as their own personal assets. Since the lost Fund assets belong to the trust (not Plaintiffs), only the trustee (not Plaintiffs) has the standing to sue for that injury.

Plaintiffs ask the Court to reject cited precedent—the Second and Third Restatements of Trusts and *Jones v. KPMG, LLP*—because they are persuasive, not binding, authority. But these precedents are *persuasive*, and their logic is sound. *Jones* is directly on point with almost identical facts and a well-reasoned decision. *Jones v. KPMG, LLP*, 2019 WL 6895960 (S.D. Miss. Dec. 19, 2019). Numerous courts across the country have been applying the same rule against beneficiary standing for decades. *See e.g., Ass'n of Fire Fighters, Local 2665 v. City of Clayton*, 320 F.3d 849 (8th Cir. 2003); *Glassie v. Doucette*, 157 A.3d 1092 (R.I. 2017); *Ex parte Callan Assocs.*, 87 So.3d 1161, 1166 (Ala. 2011); *Apollinari v. Johnson*, 305 N.W.2d 565 (Mich. 1981). The Restatements are black-letter law followed by state and federal courts alike. And the Sixth Circuit—a binding authority—expressly applied the rule against beneficiary standing in *Osborn v. Griffin*, 865 F.3d 417, 446–47 (6th Cir. 2017).

Plaintiffs claim that *Osborn* "has no bearing on the question of how much weight the Tennessee state courts might give to the Restatement of Trusts." Opp. at 7. This asks the Court to pretend that courts are not guided by each other's decisions (or the Restatements) and to ignore a precedent from its own Circuit Court. The Sixth Circuit's belief that the Restatement applies to Kentucky is considerable evidence that the same Circuit would apply the same Restatement principles to Tennessee as well. Indeed, the Sixth Circuit applied the rule against beneficiary standing in *Osborn* despite the fact that Kentucky has the same statutory provision as Tennessee contemplating beneficiary standing. *Compare* Ky. St. § 386B.10-050 *with* Tenn. Code Ann. § 35-15-1005(a). As the *Osborn* Court ruled, these provisions do not abrogate the rule against beneficiary standing, but instead apply to the rule's own internal exceptions (none of which apply here).

Plaintiffs cite no contrary authority, binding or persuasive, holding that the rule against

beneficiary standing does not apply in Tennessee or to cases like this. Their sole case, *McCool v. AHS Mgmt. Co.*, 2021 WL 826756 (M.D. Tenn. Mar. 4, 2021), is inapplicable because it involves an ERISA plan, and ERISA provides a statutory cause of action for beneficiaries to sue under certain circumstances. The *McCool* Court expressly cited that statutory provision—29 U.S.C. § 1132—in its decision. 2021 WL 826756 at *1.

Plaintiffs attempt to squeeze into two exceptions to the rule against beneficiary standing, neither of which they plead in the Complaint. First, they try to invoke the "unsuitable trustee" exception by arguing that the current trustee (Dr. Miller) has "an obvious conflict of interest . . . in this matter." Opp. at 8 (citing Restatement (Third) of Trusts § 107(2)(b)). The complaint contains no such allegations of conflict, corruption, or breach of fiduciary duty against Dr. Miller, nor have Plaintiffs requested that Dr. Miller bring suit himself, as is required to invoke this exception. If Plaintiffs believed Dr. Miller was breaching his duty, they should have included him as a Defendant in this lawsuit. Since they have not done so, they cannot speak out of both sides of their mouth by implicating him in their opposition brief. And if this Court believes Dr. Miller is a deficient trustee, the proper recourse is not to let Plaintiffs sue, but to appoint a trustee ad litem, as was done with the plan in the *Jones* case. *See also Apollinari*, 305 N.W.2d 565; *Matter of Estate of Osguthorpe*, 491 P.3d 894, 925 (Utah 2021); Restatement (Third) of Trusts § 107 cmt. d.

Second, Plaintiffs claim they are exempt from the rule against beneficiary standing because some class members are retired and could request disbursements immediately. Opp. at 10. This is a gross misapplication of an exception intended to allow beneficiaries with actual possession of tangible trust property—such as a beneficiary living in a house held for him in a trust—to sue for direct invasions to that property—such as trespass or nuisance. Restatement (Third) of Trusts § 107 cmt. c2. Here, the retirees do not possess trust property, nor are they even entitled to

immediate distribution of it. Instead, they are, at best, entitled to <u>*disbursements*</u> from the trust. *See PNC Bank, Nat. Ass'n v. Gorette Mechanical Co.*, 88 F. Supp. 3d 775, 783 (E.D. Mich. 2015) (holding that beneficiaries/partners lacked standing to sue for lost partnership profits because injury-in-fact was to trust/partnership, not them). And the proposed class is much broader than just retirees, and includes all current employees, who are not entitled to any immediate distribution. This underscores the fundamental standing problem here: any money recovered in this suit must go to the trust, not to Plaintiffs, so Plaintiffs are not suing for their own losses and therefore have no injury-in-fact. And the mix of retirees and current employees in the class underscores one of the key reasons for the rule against beneficiary standing: not all beneficiaries have the same interests, and only the trustee is positioned to act on behalf of all beneficiaries equally.

## II. SYMETRA BREACHED NO DUTY—FIDUCIARY OR OTHERWISE

Plaintiffs agree Symetra had no duty to supervise or monitor Harris's "activities that did not directly involve Symetra." Opp. at 11. Since all of the Plan's losses stem from investments outside of Symetra, this should be the end of Symetra's involvement in this case. Plaintiffs attempt to circumvent this inevitable result by arguing that Symetra breached the basic negligence "prudent person standard" when executing the disbursements Harris requested to Eaton and Motorskills. *Id*. Invoking only this basic negligence standard, Plaintiffs abandon their prior position that Symetra owed some special fiduciary duty of care to the Plan. Indeed, the opposition is entirely devoid of any argument that the facts alleged in the Complaint make Symetra a fiduciary.[1] Clearly, it is not.

Nor did Symetra breach even the traditional prudent person standard when it allegedly

---

[1] Without citing any caselaw, Plaintiffs argue Symetra can be liable for breach of fiduciary duty even if it was not a fiduciary as long as it had knowledge of the breach. Opp. at 11. There is no such theory pled against Symetra in the Complaint, and Plaintiffs allege no *facts* that plausibly suggest Symetra had any knowledge of Harris's misconduct.

made two disbursements to Eaton and Motorskills at Harris's direction.  Contrary to Plaintiffs' suggestion that these disbursements were fishy, there was nothing facially improper about either one.  Retirement plans regularly make disbursements to service providers, which is what Harris claimed Eaton was.  And Plaintiffs never allege that Symetra knew the disbursement to Eaton would be used as collateral for a loan to Financial Technologies LLC or that this company had other business dealings with AMEC.  Even if Symetra did know such things, they would not provide Symetra with a reason or the legal authority to refuse to execute the disbursement. Plaintiffs propose a new theory in their opposition that Eaton was somehow an agent of Symetra, a complete fabrication that was never alleged in the Complaint and for which Plaintiffs offer no evidence.  Opp. at 20.  But even if that were true, it does not make the disbursement to Eaton a breach of any duty or provide Symetra with any contractual or legal basis to refuse Harris's disbursement order.  Plaintiffs cannot contest that this disbursement was directed by Harris and that Symetra was therefore contractually required to execute it.

The disbursement request to Motorskills was not suspicious either.  Trustees managing $100 million in assets commonly request transfers of tens of millions of dollars when they change their investments.  Symetra had no knowledge of what kind of investment Motorskills was, no duty to investigate it, and no reason to think it was a scam or fraud.  Plaintiffs do not allege otherwise, nor could they.  Nothing about Harris's request to disburse money to Motorskills would give a prudent person pause, and it bears no resemblance at all to the strawman hypotheticals Plaintiffs propose regarding casinos, fake email addresses, and Swiss bank accounts.[2]  Opp. at 12.

---

[2] Moreover, as long as Symetra confirmed that the disbursement was requested by Harris (not some fake email address) and was authorized under the contract, Symetra was obligated to execute it, even to a Swiss bank account or casino.  Those may be questionable investments, but it is AMEC, not Symetra, who is responsible for policing Harris's investment decisions.

Plaintiffs argue that Symetra failed to maintain proper "controls" to prevent mismanagement, self-dealing, and embezzlement. Opp. at 2. This conclusory allegation must be disregarded because Plaintiffs do not say what controls Symetra was supposedly missing or how any such controls failed to meet the prudent person standard. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527–28 (6th Cir. 2007). Plaintiffs also never explain what they believe Symetra should have done to prevent Harris's fraud. Plaintiffs eschew this explanation because it is so ridiculous. According to Plaintiffs, when Symetra received the disbursement request to Motorskills, it should have initiated an ultra vires investigation into what Motorskills was, what ties it had to Harris and AMEC, and whether it was an appropriate investment for the Plan. Since none of this is public information, that would have required significant time, manpower, and expense. Symetra had no right to conduct such an investigation or delay the disbursement while it did so, and the Plan never agreed to pay for it. And what should Symetra have done if it concluded Motorskills was suspicious? Breach its contract by refusing to make the disbursement? Start calling random AMEC directors and telling them Symetra believed Motorskills might be an inappropriate investment?

Harris had the authority to withdraw and transfer Plan monies invested with Symetra, and Symetra was obligated to disburse according to his instructions. Harris's misconduct involved investments outside of Symetra, and Symetra was never in a position to know about or police the propriety of those investments. Moreover, the specific disbursements Harris requested do not plausibly raise any red flags, so Symetra's execution of those requests cannot possibly constitute the breach of any duty.

### III. SYMETRA'S DISBURSEMENTS DID NOT PROXIMATELY CAUSE ANY HARM

Plaintiffs must plead a *plausible* theory by which their damages were proximately caused

by unlawful conduct by Symetra. They have failed to do so. Neither Symetra's alleged lack of "controls" nor its execution of two disbursements requested by Harris proximately caused any loss of Fund assets. No matter what controls Symetra had in place, it would have ultimately made the two disbursements because Harris was the Plan Trustee, who had authority to request them. Symetra was legally and contractually required to execute those requests, which severs any causation associated with any deficiency in controls, failure to confirm Harris's authority, or failure to investigate.

The disbursement to Eaton was not a but-for (i.e. factual) cause of any loss because presumably Eaton would have used something else as collateral for the loans (or could have gotten the loans without any collateral). Plaintiffs do not allege that the loans were contingent on the availability of disbursement checks as collateral. And neither the disbursement to Eaton nor the one to Motorskills was a proximate cause of any loss because it was not reasonably foreseeable to Symetra that Harris would use either one to commit fraud. Plaintiffs plead that no one involved in AMEC had any idea of Harris's misconduct, so how could Symetra plausibly be on notice? Compl. ¶ 236. And Plaintiffs concede that Symetra could not reasonably supervise Harris's investments outside of Symetra. Opp. at 11.

Plaintiffs complain Symetra wants to "permanently extricate itself from the litigation," Opp. at 20, and they argue the Court should not dismiss Symetra unless there is no possible set of facts that could be later discovered that would make Harris's fraud foreseeable to Symetra. Opp. at 12. That is not the pleading standard. Plaintiffs have an obligation under the Rules of Civil Procedure to affirmatively plead a plausible set of facts that raise a reasonable inference of wrongdoing by Symetra before they can burden Symetra with the expense and disruption of discovery and further litigation. Plaintiffs have not done so, so Symetra should be dismissed.

### IV. PLAINTIFFS' TENNESSEE UNIFORM TRUST CODE CLAIM IS DERIVATIVE OF THEIR FIDUCIARY DUTY CLAIM AND FAILS FOR THE SAME REASONS

Plaintiffs argue that Symetra is a trustee under the Tennessee Uniform Trust Code because it is a fiduciary and that it violated the code by making the same allegedly negligent disbursements described above. Opp. at 13–14. This statutory claim is entirely derivative of Plaintiffs' breach-of-fiduciary-duty claim: both hinge on Symetra being a fiduciary and violating its duty by making disbursements (validly) ordered by Harris. But Symetra isn't a fiduciary. Plaintiffs say they "have expressly pleaded that Symetra was a fiduciary," Opp. at 13, but that is not true. Plaintiffs *call* Symetra a fiduciary in their Complaint (a mere legal conclusion that must be disregarded), but they fail to allege any *facts* that would plausibly make it so. Compl. ¶ 23. Symetra was not a named fiduciary of the Plan, and it never had discretion over any of the Fund assets, especially not the ones that were squandered or embezzled by Harris. Symetra made precisely these arguments in its motion to dismiss, and Plaintiffs make no attempt to refute them in their opposition. Neither Plaintiffs' Complaint nor their opposition brief give the Court any reason to believe that Symetra had the type of discretion required to make it a fiduciary.[3]

### V. PLAINTIFFS CANNOT MAINTAIN ERISA CLAIMS AGAINST SYMETRA WHILE AFFIRMATIVELY PLEADING THAT ERISA DOES NOT APPLY

Plaintiffs are entitled to plead in the alternative, but they cannot plausibly plead claims that directly contradict their own factual allegations. Plaintiffs now assert "it is entirely unclear whether the Plan is, in fact, governed by ERISA," Opp. at 15, but that is not what Plaintiffs pled in their Complaint. The Complaint states that Plaintiffs "do not assert the Plan is an actual ERISA Plan," Compl. ¶ 126, and that "[a]s a church plan, the Plan is exempted from ERISA unless it

---

[3] Even if Symetra were a fiduciary and trustee under the statute, Plaintiffs' statutory claims still fail due to the same lack of causation that is fatal to their common-law claims.

affirmatively elected to be governed by ERISA." *Id.* ¶ 8. Plaintiffs do not allege in the Complaint that the Plan elected to be governed by ERISA. Nor could they. The actual Plan attached to the Complaint has an entire section devoted to clarifying that the Plan is <u>not</u> subject to ERISA: "Notwithstanding anything herein to the contrary, this Plan is not intended to be subject to the Employee Retirement Income Security Act of 1974. The Plan is a non-electing Church Plan." Plan § 9.13. Given this express provision, Plaintiffs cannot plausibly allege that the Plan is subject to ERISA, so they cannot plausibly plead causes of action under that statute.

But even if they could, any ERISA claims would fail for the same reasons as their common-law breach-of-fiduciary-duty claims: namely, Plaintiffs have not pled facts plausibly making Symetra a fiduciary or causally connecting Symetra's alleged disbursements to any losses. Plaintiffs have not alleged that Symetra exercised any discretion, authority, or control over any Plan assets, as fiduciary status requires under ERISA, even according to the cases they cite. *See Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir. 1999) (holding ERISA fiduciary is "anyone who exercises any discretionary authority or discretionary control respecting management of the plan or exercises any authority or control respecting management or disposition of its assets."). Plaintiffs suggest Symetra had control of the funds in its annuity, but this conflates possession with control. Symetra may have held an annuity contract, but control, authority, and discretion over the funds in the contract remained with Harris as Plan trustee. Symetra was contractually obligated to handle the funds as Harris directed, so Symetra never "controlled" the management or disposition of Fund assets.

Finally, Plaintiffs suggest that non-fiduciaries can be liable under ERISA. Opp. at 19. This is a red herring because Plaintiffs concede that only equitable remedies can be sought against such non-fiduciaries, and Plaintiffs seek no equitable remedies against Symetra.

Dated:  December 5, 2022

Respectfully submitted,

*/s/  Markham R. Leventhal*
Markham R. Leventhal (DC Bar No. 489597)
Benjamin M. Stoll (DC Bar No. 1006837)
CARLTON FIELDS, P.A.
Suite 400 West
1025 Thomas Jefferson Street, NW
Washington, DC 20007
Telephone:  (202) 965-8189
mleventhal@carltonfields.com
bstoll@carltonfields.com

Todd M. Fuller (FL Bar No. 666211)
CARLTON FIELDS, P.A.
2 MiamiCentral, Suite 1200
700 NW 1st Avenue
Miami, Florida 33136
Telephone:  (305) 530-0050
tfuller@carltonfields.com

*Attorneys for Defendant*
*Symetra Financial Corporation*

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on this 5th day of December, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies the recipients of electronic notice.

                                                    */s/ Markham R. Leventhal*
                                                    Markham R. Leventhal

131345991