# EXHIBIT E

Message
―――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――――

| | |
|---|---|
| **From**: | JEROME V. HARRIS [jvharris@mindspring.com] |
| on behalf of | JEROME V. HARRIS <jvharris@mindspring.com> [jvharris@mindspring.com] |
| **Sent**: | 6/5/2021 2:31:25 PM |
| **To**: | bob@dayandnightsolar.com |
| **Subject**: | Motorskill Member Interest Transfer Letter |
| **Attachments**: | Motorskill Asset Transfer Letter.docx |

Bob, take a look at this cover letter and let me know your thoughts  asap
Thanks

JEROME V. HARRIS
EXECUTIVE DIRECTOR/PLAN ADMINSTRATOR
(901) 527-2006

Exhibit 470

Confidential                                                                                                        HARRIS_000786

*Sent via Email Transmission*

June 3, 2021

Mr. Jarrod Erwin, President
Motorskill Ventures LLP1

**Re: Membership Interest Purchase/Transfer Agreement**

Dear Jarrod:

As you aware, I must retire from my present position as Executive Director of the Department of Retirement Services of the African Methodist Episcopal Church on July 5, 2021 in accordance with church law. As a result, it is critically important that all of the church's ownership interest in the Motor skill investments funded by the AME Retirement Plan be placed in the name of the church or its designated entity (AMEC Financial Services, Inc) in order to insure the church's interests and avoid any possible confusion and misunderstanding by the person elected to succeed me in July.

As stipulated in the attached Agreement as reference above, this action would effectively transfer the 11% membership interest currently owned by DNS to AMEC Financial Services as a subsidiary entity of the AME Church and will be more readily available to be carried on the books of the church as a credited asset.

According to my calculations and the accrued dividend valuation estimated to be $5.00 to $7.00 per share, it is my conclusion that the aforementioned membership interest of 11% should be equitably valued at approximately $750,000.

This transfer would be effective immediately with the signatures of the authorizing parties as shown on the Agreement and would serve as confirmation of full ownership of these shares by the AME Church.

Your father and I have been in regular contact by telephone and are aware of the need for urgency to initiate actions that would better protect the church's investment interests as much as possible and as soon as possible. Your prompt attention and concurrence in the matter is greatly appreciated. Please contact me at (901) 491 8474 or email me at jvharris@mindspring.com to confirm your receipt of this information.

Sincerely,

Jerome V. Harris
Executive Director

Confidential

HARRIS_000788

| | |
|---|---|
| Message | |
| **From**: | JEROME V. HARRIS [jvharris@mindspring.com] |
| on behalf of | JEROME V. HARRIS <jvharris@mindspring.com> [jvharris@mindspring.com] |
| **Sent**: | 6/5/2021 2:36:40 PM |
| **To**: | J H [jvharris@mindspring.com] |
| **Attachments**: | Motorskill Asset Transfer Letter.docx |

```
JEROME V. HARRIS
EXECUTIVE DIRECTOR/PLAN ADMINSTRATOR
(901) 527-2006
```

Confidential                                                                                               HARRIS_000789

| | |
|---|---|
| **Message** | |
| **From:** | JEROME V. HARRIS [jvharris@mindspring.com] |
| on behalf of | JEROME V. HARRIS <jvharris@mindspring.com> [jvharris@mindspring.com] |
| **Sent:** | 6/5/2021 7:45:50 PM |
| **To:** | Bob Eaton [bob@dayandnightsolar.com] |
| **Subject:** | Re: Motorskill Member Interest Transfer Letter |

Got it. Thanks


JEROME V. HARRIS
EXECUTIVE DIRECTOR/PLAN ADMINSTRATOR
(901) 527-2006


-----Original Message-----
>From: Bob Eaton <bob@dayandnightsolar.com>
>Sent: Jun 5, 2021 6:15 PM
>To: "JEROME V. HARRIS" <jvharris@mindspring.com>
>Subject: Re: Motorskill Member Interest Transfer Letter
>
>Looks good other than the second paragraph it should read Motorskill/Lifeline in stead of DNS and I think it is spot on.
>
>Feel free to give me a call.
>
>Thanks
>Bob
>
>Sent from my iPhone
>
>> On Jun 5, 2021, at 2:36 PM, JEROME V. HARRIS <jvharris@mindspring.com> wrote:
>>
>> Bob, take a look at this cover letter and let me know your thoughts   asap
>> Thanks
>>
>>
>> JEROME V. HARRIS
>> EXECUTIVE DIRECTOR/PLAN ADMINSTRATOR
>> (901) 527-2006
>> <Motorskill Asset Transfer Letter.docx>

Confidential                                                                                                            HARRIS_000792

Message
---

| | |
|---|---|
| **From**: | JEROME V. HARRIS [jvharris@mindspring.com] |
| on behalf of | JEROME V. HARRIS <jvharris@mindspring.com> [jvharris@mindspring.com] |
| **Sent**: | 6/8/2021 11:15:25 AM |
| **To**: | jerwin@motorskill.com |
| **CC**: | rerwin@motorskill.com |
| **Subject**: | Membership Interest Purchase/Transfer |
| **Attachments**: | DOC030.PDF |

Jarrod - I hope all is well with you and yours. Please see the attached letter and Transfer Agreement which I would like to get completed as soon as possible due to my pending retirement in July. I have expressed the need for urgency with your father and he instructed me to send this to you and/or Ryan. I don't have a mailing address which is why this is being sent via email. Please respond by email or give me a callas soon as possible.
Thanks and Be Blessed

JEROME V. HARRIS
EXECUTIVE DIRECTOR/PLAN ADMINSTRATOR
(901) 527-2006

Confidential



# AMEC Department of Retirement Services

**Dr. Jerome V. Harris**
*Executive Director*

**Bishop Samuel L. Green, Sr.**
*Commission Chairman*

*Sent via Email Transmission*

June 7, 2021

Mr. Jarrod Erwin, President
Motorskill Ventures LLP1

Re: **Membership Interest Purchase/Transfer Agreement**

Dear Jarrod:

As you aware, I must retire from my present position as Executive Director of the Department of Retirement Services of the African Methodist Episcopal Church on July 5, 2021 in accordance with church law. As a result, it is critically important that all of the church's ownership interest in the Motor skill investments funded by the AME Retirement Plan be placed in the name of the church or its designated entity (AMEC Financial Services, Inc) in order to insure the church's interests and avoid any possible confusion and misunderstanding by the person elected to succeed me in July.

As stipulated in the attached Agreement as reference above, this action would effectively transfer the 11% membership interest currently owned by Motorskill/Lifeline to AMEC Financial Services as a subsidiary entity of the AME Church and will be more readily available to be carried on the books of the church as a credited asset.

According to my calculations and the accrued dividend valuation estimated to be $5.00 to $7.00 per share, it is my conclusion that the aforementioned membership interest of 11% should be equitably valued at approximately $750,000.

This transfer would be effective immediately with the signatures of the authorizing parties as shown on the Agreement and would serve as confirmation of full ownership of these shares by the AME Church.

Your father and I have been in regular contact by telephone and he is aware of the need for urgency to initiate actions that would better protect the church's investment interests as much as possible and as soon as possible. Your prompt attention and concurrence in the matter is greatly appreciated. Please contact me at (901) 491 8474 or email me at jvharris@mindspring.com to confirm your receipt of this information.

Sincerely,

Jerome V. Harris
Executive Director

P.O. Box 1857 | Memphis, TN 38101
280 Hernando Street | Suite 300 | Memphis, TN 38126
Telephone   901.527.2006   Toll Free   800.992.6327
Fax          901.527.2007
Email        amec_des@bellsouth.net
Web          www.amecdaii.org

*"Creating a Better Future For Those Who Serve The Lord"*

HARRIS_000794

## MEMBERSHIP INTEREST PURCHASE/ TRANSFER AGREEMENT

This Membership Interest Purchase/Transfer Agreement dated April 1st, 2021, by and **between Motorskill Ventures LLP 1 ("Seller") and AMEC Financial Services ("Buyer").**

### RECITALS

A.  Seller is the owner of 11.00% membership interest in DNS, (the "*Subject Interest*").

B.  Seller is a party to that certain First Amended Operating Agreement (the "*Operating Agreement*"). All terms used herein and not otherwise defined are assigned the definitions set forth in the Operating Agreement.

C.  Under the Operating Agreement, if a member wishes to transfer or sell their membership interest, they may do so but DNS has a right of first refusal and must approve said transaction.

E.  Seller has offered to sell to Buyer, and Buyer has agreed to purchase from Seller, all of the Subject Interest.

### AGREEMENT

In consideration of the premises and the mutual covenants hereinafter set forth, the parties hereto agree as follows:

1. Seller shall transfer his 11.00% interest to Buyer in consideration for the agreement(s) contained herein and for the payment/credit of $750, 00.00 from the seller's current "MVG" portfolio. The portfolio will transfer all ownership and the buyer will accept a credit against current investments in said portfolio. Payment/Credit shall be made upon execution of this Agreement. Seller's release of ownership interest in DNS to Buyer shall be effective upon final acceptance of transaction by DNS per the current operating agreement. Seller agrees this is in full consideration of his/her Subject Interest and Seller shall not be entitled to any further payments or distributions, of any kind from DNS or the Buyer. Seller shall be responsible for all his personal tax liability regarding said transaction.

2. Sellers agree to and does hereby releases and forever discharge Buyer, DNS, its members, successors, affiliates, or assigns, from any and all claims and liabilities of every kind and nature whatsoever, whether known or unknown, which one has, or may have, up to and including the date of this Agreement against any of the other parties as it relates to Seller's membership interest, but not including any claim arising out of a breach of this Agreement (including the breach of any warranty or representation contained herein).

3. Seller covenants and agrees to indemnify and hold harmless DNS, its members, successors, affiliate, or assigns, from any damage, liability or obligation, including but not limited to legal, accounting, and other professional fees and costs related to Seller's acts or omissions as a member of DNS and/or the alleged wrongful or improper sale of his Subject Interest.

4. For purposes of this Agreement, the term "Confidential Information" shall mean information disclosed to Seller or known, learned, created or observed by Seller about DNS business activities, services and processes, which information is not public or generally known in the DNS/Buyer's trade or industry, including but not limited to, information concerning the DNS/Buyer's services, inventions, contracts, marketing strategies, policies, data bases, manuals, publicity, research, finances, accounting, trade secrets, business plans, client/customer or supplier lists and record, potential client/customer or supplier lists, client/customer records, client/customer and supplier billing, and legally sensitive materials such as attorney-client information. Seller acknowledges that the Confidential Information is confidential to and a valuable asset of DNS/Buyer and is proprietary to and includes trade secrets of DNS, and is an integral part of the goodwill of DNS/Buyer. Also, Seller agrees that any Confidential Information received by Seller from DNS/Buyer pursuant to this agreement is a "trade secret" under 765 ILCS 1065/2.

1

Seller shall not at any time during the four year period after execution of this Agreement ("Restricted Period") directly or indirectly divulge, furnish, use, publish or make accessible to any person or entity any Confidential Information unless doing so is clearly necessary for Seller to carry out Seller's duties under this Agreement. Any records of Confidential Information prepared by Seller or which came into Seller's possession during his ownership in DNS are and remain property of DNS and all such records and copies thereof shall be left with or returned to the DNS/Buyer. Seller agrees to use his reasonable efforts and diligence during and after any term of this Agreement with Buyer to protect the Confidential Information and Buyer's goodwill. Seller agrees to promptly advise Buyer, in writing, of any misappropriation, misuse or disclosure of Confidential Information by any person, which is not permitted by this Agreement, but which has come to Seller's attention. **Additionally, Seller covenants he has not disclosed any Confidential Information prior to the execution of this agreement. If Seller has intentionally or inadvertently disclosed any Confidential Information, Seller agrees to promptly advise Buyer, in writing, of such disclosure. Further Seller covenants that any intentional breach of this confidentiality provision after the date of the Agreement shall constitute "willful and malicious misappropriation" of a trade secret under 765 ILCS 1065/4.**

Notwithstanding anything to the contrary contained in this Agreement, the restrictions on Seller's disclosure and use of the Confidential Information shall not apply to: (a) information, processes or techniques which are or become generally known, other then through disclosure by Seller; or (b) disclosure of Confidential Information in judicial or administrative proceedings to the extent Seller is legally compelled by order of court to disclose such information, and Seller shall immediately advise Buyer of any request or subpoena calling for the disclosure of any Confidential Information and to use Seller's best effort to afford Buyer the opportunity to obtain an appropriate protective order or other assurance satisfactory to Buyer of confidential treatment for the information required to be so disclosed.

**Because in some cases it is difficult to measure the damages resulting from a breach of this Paragraph 4, the Seller acknowledges that he will pay Buyer five thousand dollars ($5,000.00) in liquidated damages for each breach of this Paragraph 4, and such payment is not a penalty. However, should Buyer's actual damages resulting from the breach of this Paragraph 4 exceed the liquidated damages amount, then Buyer shall be entitled to its actual damages in lieu of its liquidated damages, and nothing in this provision shall preclude Buyer from receiving punitive damages, statutorily provided damages, or other damages if otherwise allowed by law. Seller agrees that if this confidentiality agreement is breached, Buyer cannot be made whole by monetary damages.**

**Accordingly, in addition to any other remedy which Buyer may be entitled to at law or at equity, and/or under the terms and provision of Paragraph 4, including but not limited to the liquidated damages, actual damage, punitive damages, statutorily provided damages and other damages described above, Buyer shall be entitled to an injunction to prevent breaches, threatened breaches and/or future breaches.** Buyer shall be entitled to obtain injunctive relief against Seller, without bond (unless otherwise required by law) but upon due notice, in addition to such other relief as may appertain at law or equity. In the event of the entry of any such injunction, Seller's sole remedy shall be the dissolution of such injunction, if such is warranted upon hearing duly had, and all claims for damages by reason of the wrongful issuance of any such injunction are hereby waived by Seller. Obtainment of any such injunction by Buyer shall not be deemed an election of remedies or a waiver of any right to assert any other remedies Buyer may have at law or in equity.

5. Seller represents and warrants to Buyer that he is the current owner of the Subject Interest and he has not heretofore pledged, assigned, hypothecated or otherwise encumbered or conveyed any of the Subject Interest and further that he has full right and power to enter into this Agreement and to consummate, or cause to be consummated, all of the transactions, and to fulfill all of the obligations contemplated herein and no other person has any right or option to purchase or otherwise obtain Seller's interest in the Subject Interest except as set forth in the Operating Agreement.

Confidential

HARRIS_000796

6. Buyer represents and warrants to Seller that it has full right and power to enter into this Agreement and to consummate, or cause to be consummated, all of the transactions and to fulfill all of the obligations contemplated herein.

7. The parties agree as follows: (i) This Agreement will inure to the benefit of, and be binding upon, the respective parties hereto, their heirs, successors and assigns; (ii) this Agreement constitutes the entire agreement between the parties pertaining to the subject matter hereof and supersedes all prior agreements, understandings, negotiations and discussions of the parties, whether oral or written; (iii) no amendment, modification, supplement, termination, consent or waiver of any provision of this Agreement, nor consent to any departure therefrom, will in any event be effective unless the same is in writing and is signed by the party against whom enforcement of the same is sought. Any waiver of any provision of this Agreement and any consent to any departure from the terms of any provision of this Agreement is to be effective only in the specific instance and for the specific purpose for which given; (iv) they will execute and deliver such further instruments and do such further acts and things as may be required to carry out the intent and purpose of this Agreement, including transferring any incident of ownership in the Buyer; and (v) any provision of this Agreement which is prohibited, unenforceable or not authorized in any jurisdiction is, as to such jurisdiction, ineffective to the extent of any such prohibition, unenforceability or nonauthorization without invalidating the remaining provisions hereof, or affecting the validity, enforceability or legality of such provision in any other jurisdiction, unless the ineffectiveness of such provision would result in such a material change as to cause completion of the transactions contemplated hereby to be unreasonable.

8. In the event any party brings suit to construe or enforce the terms of this Agreement, or raises this Agreement as a defense in a suit brought by another party, the prevailing party in such suit, as determined by the court, shall be entitled to recover its reasonable attorneys' fees and other legal expenses associated therewith.

9. This Agreement shall be construed and interpreted in accordance with the laws of the State of Illinois, and that all issues regarding enforcement or construction of this Agreement shall be heard in the Circuit Court of Madison County, Illinois. All parties agree to personal jurisdiction in Madison County, Illinois.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed on the day and year first above written.

**SELLER:**

Motorskill Venture Group LP1

_____
Jarred Erwin
President CEO

**BUYER:**

AMEC Financial Services, LLC

_____
Jerome V Harris,
President

**Accepted by:**
Day and Night Solar, LLC

_____
Robert Eaton
Managing Member

Confidential

HARRIS_000797

Message

| | |
|---|---|
| **From**: | JEROME V. HARRIS [jvharris@mindspring.com] |
| on behalf of | JEROME V. HARRIS <jvharris@mindspring.com> [jvharris@mindspring.com] |
| **Sent**: | 6/8/2021 8:56:13 PM |
| **To**: | bob@dayandnightsolar.com |
| **Subject**: | Fw: Follow Up |

Hi Bob - This is the response I received from Doc in regards to the email w/ Agreement I sent to Jarrod earlier today.

JEROME V. HARRIS
EXECUTIVE DIRECTOR/PLAN ADMINSTRATOR
(901) 527-2006

-----Forwarded Message-----
>From: Doc Erwin <docerwin@motorskill.com>
>Sent: Jun 8, 2021 7:58 PM
>To: "jvharris@mindspring.com" <jvharris@mindspring.com>
>Subject: Follow Up
>
>
>Hi Dr Harris. Jarrod is out of town and forwarded me your message. I will be reviewing it with the the wind down counsel over the next few days and be back in communication by the end of the week. Much appreciated.

Confidential